1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                      **FOR THE DISTRICT OF ARIZONA**
8
9   Pedro Imperial Vega,                    )    No. CV-09-473-TUC-CKJ (DTF)
                                            )
10             Petitioner,                   )    **REPORT & RECOMMENDATION**
                                            )
11  vs.                                      )
                                            )
12  Charles L. Ryan, et al.,                 )
                                            )
13             Respondents.                  )
    _____     )
14

15          Pending before the Court is a Petition for Writ of Habeas Corpus brought pursuant to 28

16  U.S.C. § 2254.  Petitioner, Pedro Imperial Vega, while confined in the Arizona State Prison in

17  Florence, AZ, alleges he is being held unlawfully due to ineffectiveness of counsel at trial and

18  on direct appeal.  Pursuant to the Rules of Practice of this Court, this matter was referred to

19  Magistrate Judge Ferraro for a Report and Recommendation. Before the Court are the Amended

20  Petition for Writ of Habeas Corpus and supporting documents (Doc. 4), and Respondents'

21  Answer with supporting documents (Docs. 11, 16).

22                 **FACTUAL AND PROCEDURAL BACKGROUND**

23          Petitioner was convicted of contributing to the delinquency of a minor, molestation of

24  a child, and three counts of sexual abuse of a child under fifteen, for crimes committed against

25  his stepdaughter.  (RT 12/9/02 at 2-3.)[1]  The victim's allegations are discussed in the record as

26  _____

27          [1]       RT refers to the reporter's transcripts from trial and the post-conviction
    evidentiary hearing.  The transcripts are attached to the Answer as exhibits (Doc. 11, Exs. D,
28  E, M, N, Q, S-V; Doc. 16, Ex. W.)

the "first set of allegations," dating from July 1995 to February 1996, and the "second set of allegations" dating from August 1996 to December 1999.  The Arizona Court of Appeals summarized the factual basis of the convictions:

> [In February 1996,] Vega agreed with B. that she could put make-up on his face if he could touch her "private area."
>
> Later, after the family had moved to another home, Vega took B. into his room, where he tickled and touched her on her "breasts and [her] vagina area" over her clothes. . . . While B. was at her grandparent's house, on yet another day, Vega grabbed B.'s breasts while she was working in the kitchen.

(Doc. 11, Ex. A at 2.)[2]  When the consecutive sentences are added together, Petitioner was sentenced to a total of twenty-seven years in prison.  (RT 12/9/02 at 11-12.)

Petitioner's convictions and sentences were upheld on direct appeal.  (Doc. 11, Ex. A.)  The Arizona Supreme Court denied review.  (*Id.*, Ex. F.)  Petitioner filed a petition for post-conviction relief (PCR).  (Doc. 4, Ex. 3.)  The PCR court held an evidentiary hearing and denied the petition.  (Doc. 11, Exs. G, M, N.)  In ruling on Petitioner's PCR petition, the court set forth helpful background facts:

> In 1996, the victim (B.) originally raised molest allegations, such which formed the basis for Counts 1-3.  Those allegations were originally charged in the federal system, then dismissed after Petitioner's attorney (Denise Shepard) in that case learned that the victim had recanted such allegations, both to her mother, and a priest, Father Daniel P. McLaughlin.  Those charges were later reinstated in state court (CR-53329, in which Petitioner was represented by Ralph Ellinwood), but dismissed after Mr. Ellinwood learned of the recantations.  Counts 4-8 arose from allegations made by the victim in 2001.
>
> . . . .
>
> During trial, the victim testified that she recanted the first set of allegations to her mother.  Petitioner himself was aware of these recantations.  Petitioner alleges that Mr. Darby [trial counsel] was never made aware that this recanting occurred.  On December 9, 2002, Mr. Darby filed a Motion to Vacate Judgment, in which he set forth the entire history of the victim's recantations as well as the convoluted route the case took through the federal and state court systems. . . . This Court heard evidence on this motion on January 27, 2003, including testimony from Father Daniel P. McLaughlin, Denise Shepard, Ralph Ellinwood, and Pro Tempore Judge Fell [the state court prosecutor], and considered the records and pleadings before it as well as said testimony prior to entering a denial of the motion on February 10, 2003.

---

[2]      The court of appeals included alleged facts from counts on which Vega was not convicted, therefore, the Court did not include those facts in the summary.

1  (*Id.*, Ex. G at 2.)  The court of appeals granted review but denied relief.  (*Id.*, Ex. H.)  The

2  Arizona Supreme Court denied review of that decision on June 1, 2009.  (*Id.*, Ex. I at 7.)

3  Petitioner filed in this Court on August 24, 2009 (Doc. 1), and filed an Amended Petition

4  on September 10, 2009 (Doc. 4).  Respondents concede that Petitioner's Amended Habeas

5  Petition is timely.  (Doc. 11 at 5.)

6  <u>**ANALYSIS**</u>

7  The petition is poorly organized, consisting of thirty-four numbered paragraphs setting

8  forth "numerous pieces of evidence" that trial counsel is alleged not to have presented.

9  Petitioner provides almost no argument and minimal discussion of the prejudice he alleges he

10  suffered based on counsel's alleged deficiencies.  However, it is apparent from the petition and

11  the answer, that Petitioner is alleging ineffective assistance of counsel (IAC) based on counsel's

12  failure to "prepare, investigate, review available evidence, object, consult with experts, present

13  recantation evidence, and properly prepare for cross-examination." (Doc. 4 at 2.)  The separate

14  paragraphs recount specific alleged failings by counsel but are not necessarily individual claims.

15  To allow for a meaningful discussion of exhaustion and the merits of the claims, the Court

16  groups the paragraphs together by topic.  (Respondents also re-grouped Petitioner's claims for

17  purposes of the Answer, however, the Court finds their inconsistent numbering system, which

18  does not reference the numbering used in the petition, unhelpful.)  To allow the District Court

19  and the parties to track the allegations, the Court notes the relevant paragraphs in the Amended

20  Petition from which each set of allegations is derived.

21  The claims as organized by the Court are:

22  Claim I: Trial counsel failed to investigate and present evidence regarding the victim's recantations (Paragraphs 1-8, 11, 12, 18, 21, 26,  27, and 28);

23

24  Claim II: Trial counsel failed to interpret and apply the rape shield laws which precluded evidence bearing on the victim's credibility (Paragraphs 9, 10, 13-17, 19, 20, and 22);

25  Claim III: Trial counsel failed to challenge and rebut prosecution expert Wendy Dutton (Paragraphs 23-25, and 29-32);

26

27  Claim IV: Trial counsel failed to object to admission of hearsay (Paragraph 33); and

28  Claim V:  Trial counsel failed to object to commentary on Petitioner's right to remain silent and appellate counsel failed to raise claim on appeal (Paragraph 34).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Because Respondents treat each of Petitioner's separately numbered paragraphs as an independent claim, they argue that many of the claims are not cognizable. Respondents do not dispute the cognizability of Petitioner's claims that counsel was ineffective regarding the victim's recantation; in understanding the rape shield law; in failing to challenge the expert's testimony; in failing to object to hearsay; and in failing to challenge testimony commenting on Petitioner's right to remain silent. (Doc. 11 at 13.) That list of claims covers generally the five categories into which the Court has grouped all of Petitioner's allegations. Although the petition is minimal and lacks clarity, the Court does not find any of the five claims should be cursorily dismissed for non-cognizability. To the extent specific allegations are insufficient, the Court addresses them within each of the five claims.

**Procedural Default**

Respondents argue that two of Petitioner's claims were found precluded in state court and many of Petitioner's factual allegations were not fairly presented. Petitioner did not file a reply brief, therefore, he did not address these assertions.

**Principles of Exhaustion and Procedural Default**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

Exhaustion requires that a petitioner clearly alert the state court that he is alleging a specific federal constitutional violation. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Gray v. Netherland*, 518 U.S. 152, 163 (1996) (general appeal to due process not

sufficient to present substance of federal claim); *Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury, and ineffective assistance of counsel lacked specificity and explicitness required); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or case law, *Lyons*, 232 F.3d at 670, or by citing state cases that plainly analyze the federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc); *cf. Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005) (mere citation to a state case that conducts both a state and federal law analysis does not, by itself, satisfy exhaustion).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically"

exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray*, 518 U.S. at 161-62.

**State Court Procedural Default of Claims I & V**

Respondents assert that Petitioner's claim of IAC for failing to present the victim's recantation was found precluded in state court (Claim I). (Doc. 11 at 9, 10.) The Court disagrees. Petitioner argued in state court that the victim's recantations were newly discovered evidence <u>and</u> that counsel was ineffective for failing to investigate and present the recantations. The PCR court found the newly discovered evidence claim precluded because the issue was raised on appeal. (Doc. 11, Ex. G at 4, 8.) However, the court ruled on the merits of the related IAC claim. (*Id.* at 4.) Claim I is exhausted and will be addressed on the merits.

Respondents argue that Petitioner's claim of IAC for failing to object to a comment on his right to remain silent was found precluded by the PCR court (Claim V). (Doc. 11 at 10.) The Court disagrees. Petitioner fairly presented this claim to the PCR court and the appellate court (Doc. 11, Ex. L at 15-16), and the court of appeals addressed it on the merits (*id.*, Ex. H at 5-6).[3] Therefore, Claim V was properly exhausted and will be addressed on the merits.

**Fair Presentation of Claims I and II, in Part**

Respondents allege that many of the factual allegations grouped under Claims I and II were not fairly presented in state court. It is not entirely clear as to which factual allegations they make this argument because they did not reference Petitioner's numbering system. Further, at one point during this argument Respondents focus on what they label as claim 1, subset (b)-(f) and (i)-(p), and later in the same paragraph they address claim 1, subset (a), (b), (e), (g)-(i), and (p)-(q) as the allegations at issue. (Doc. 11 at 12.) Regardless, the Court finds the factual

---

[3] The Court does not have a copy of Petitioner's Petition for Review to the Arizona Court of Appeals because it was not included with the State's Answer. (Doc. 11 at 28.) The Court ordered the State to file a supplemental set of exhibits including that petition (Doc. 13), however, the State re-submitted the Petition for Review to the Arizona Supreme Court, not the petition to the court of appeals (Doc. 16, Ex. Y). Regardless, it is clear that Petitioner raised this claim to the Arizona Court of Appeals because the court said he did so. (Doc. 11, Ex. H at 5.) The Court cites only the ruling by the appellate court because, as that court noted, the PCR court failed to rule on this claim. (*Id.*)

allegations underlying Claims I (Paragraphs 1-8, 11, 12, 18, 21, and 26-28) and II (Paragraphs 9, 10, 13-17, 19, 20, and 22) were fairly presented.  As alleged in the Amended Petition, the factual allegations in Paragraphs 2-18 and 20-21, which comprise the bulk of Claims I and II, were contained in exhibits admitted at the evidentiary hearing. (Doc. 16, Ex. X.)  Additionally, Paragraph 1 was raised in the PCR petition (Doc. 4, Ex. 3 at 13) and ruled on by the PCR court (Doc. 11, Ex. G at 4).  The PCR court found that Petitioner raised the allegations set forth in Paragraph 22 at the evidentiary hearing and the court addressed it on the merits.  (*Id.* at 6.) Paragraph 26 is a reiteration of Paragraph 1, which was raised in the PCR petition, and Paragraphs 27 and 28 are reiterations of Paragraphs 3-7 and 18, which were supported by exhibits at the PCR hearing.

To the extent any of the allegations in these specific paragraphs were not raised before the state court, they do not fundamentally alter the claims as raised in the PCR petition.  Further, as discussed below, the claims are without merit; therefore, they can be dismissed regardless of exhaustion.  28 U.S.C. § 2254(b)(2).

## **Merits**

### **AEDPA Standard for Relief**

Petitioner's habeas claims are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'"  *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939-40 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)).  The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh,* 521 U.S. at 333 n.7).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable

1    application of, clearly established Federal law, as determined by the Supreme
2    Court of the United States; or

3    (2) resulted in a decision that was based on an unreasonable determination of the
     facts in light of the evidence presented in the State court proceeding.

4    28 U.S.C. § 2254(d).

5          The phrase "adjudicated on the merits" refers to a decision resolving a party's claim

6    which is based on the substance of the claim rather than on a procedural or other non-

7    substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).  The relevant state

8    court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d

9    1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991));

10   *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

11         "The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule

12   of law that was clearly established at the time his state-court conviction became final."

13   *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Therefore, to assess a claim under subsection

14   (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs

15   the sufficiency of the claims on habeas review.  "Clearly established" federal law consists of

16   the holdings of the Supreme Court at the time the petitioner's state court conviction became

17   final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 127 S. Ct. 649, 653 (2006);  *Clark v.*

18   *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  Habeas relief cannot be granted if the Supreme

19   Court has not "broken sufficient legal ground" on a constitutional principle advanced by a

20   petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see*

21   *Musladin*, 127 S. Ct. at 654; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004).  Nevertheless,

22   while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in

23   determining what law is clearly established and whether a state court applied that law

24   unreasonably.  *Clark*, 331 F.3d at 1069.

25         The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).  The

26   Court has explained that a state court decision is "contrary to" the Supreme Court's clearly

27   established precedents if the decision applies a rule that contradicts the governing law set forth

28   in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme

1   Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from

2   a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06;

3   *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  In characterizing the claims subject to

4   analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court

5   decision applying the correct legal rule to the facts of the prisoner's case would not fit

6   comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see*

7   *Lambert*, 393 F.3d at 974.

8        Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may

9   grant relief where a state court "identifies the correct governing legal rule from [the Supreme]

10  Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably

11  extends a legal principle from [Supreme Court] precedent to a new context where it should not

12  apply or unreasonably refuses to extend that principle to a new context where it should apply."

13  *Williams*, 529 U.S. at 407.  For a federal court to find a state court's application of Supreme

14  Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state

15  court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at

16  409; *Landrigan*, 127 S. Ct. at 1939; *Visciotti*, 537 U.S. at 25.

17       Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state

18  court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*,

19  545 U.S. 231, 240 (2005) (*Miller-El II*).  A state court decision "based on a factual

20  determination will not be overturned on factual grounds unless objectively unreasonable in light

21  of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003)

22  (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  In considering a

23  challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and

24  a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence."

25  28 U.S.C. § 2254(e)(1); *Landrigan*, 127 S. Ct. at 1939-40; *Miller-El II*, 545 U.S. at 240.

26  However, it is only the state court's factual findings, not its ultimate decision, that are subject

27  to § 2254(e)(1)'s presumption of correctness. *Miller-El I,* 537 U.S. at 341-42 ("The clear and

28  convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-

court determinations of factual issues, rather than decisions.").

As the Ninth Circuit has noted, application of the foregoing standards presents difficulties when the state court decided the merits of a claim without providing its rationale. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). In those circumstances, a federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law. *Himes*, 336 F.3d at 853; *Pirtle*, 313 F.3d at 1167. Although the record is reviewed independently, a federal court nevertheless defers to the state court's ultimate decision. *Pirtle*, 313 F.3d at 1167 (citing *Delgado*, 223 F.3d at 981-82); *see also Himes*, 336 F.3d at 853. Only when a state court did not decide the merits of a properly raised claim will the claim be reviewed de novo, because in that circumstance "there is no state court decision on [the] issue to which to accord deference." *Pirtle*, 313 F.3d at 1167; *see also Menendez v. Terhune*, 422 F.3d 1012, 1025-26 (9th Cir. 2005); *Nulph v. Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

### Controlling Law for Ineffective Assistance of Counsel Claims

For IAC claims, the applicable law is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland*'s first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* For example, while trial counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, . . . a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

judgments." *Id.* at 691.  To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citation and quotation marks omitted).  As the Supreme Court recently reiterated:  "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made" and by applying deference to counsel's judgments. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (quoting *Strickland*, 466 U.S. at 689).

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed").  A petitioner must affirmatively prove prejudice.  *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  The calculus involved in assessing prejudice "should proceed on the assumption that the decision-maker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695.

Inherent in the prejudice analysis demanded by *Strickland* is the principle that in order to demonstrate that counsel failed to litigate an issue competently, a petitioner must prove that the issue was meritorious.  *See Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986).  For example, with respect to allegations that counsel was ineffective for failing to file a motion, to demonstrate prejudice a petitioner "must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (citing *Morrison,* 477 U.S. at 373-74); *see also*

*Boyde v. Brown*, 404 F.3d 1159, 1173-74 (9th Cir. 2005). Therefore, in evaluating a number of the following IAC claims, this Court is informed by the holding of the Arizona Court of Appeals on the merits of the underlying issues.

Finally, under the AEDPA, federal review of state court decisions is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). In order to merit habeas relief, therefore, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1).

**Claim I: Trial counsel failed to investigate and present evidence regarding the victim's recantations (Paragraphs 1-8, 11, 12, 18, 21, 26,  27, and 28)**

Petitioner alleges his trial counsel was ineffective for failing to investigate and present evidence that the victim was pressured to sustain the first set of allegations and, despite that pressure, she recanted to her mother, counselors, police, and her priest.

In Paragraphs 3, 4, 7, 18, 27 and 28, Petitioner alleges that the victim was "pressured" to maintain her allegations and testify in a certain manner by the State. Petitioner relies on four exhibits submitted at the PCR evidentiary hearing, exhibits A, B, E and R. Exhibit A is a therapist's notes from the day the victim was first interviewed by the police. (Doc. 16-10 at 7.) The therapist told the victim she was brave and "assured her that she had made a good decision." (*Id.*) Exhibit B is a report by Roxana Aguilar, a casemanager with the Pascua Yaqui Tribe, to whom the victim first reported the molestation. (*Id.* at 8.) Aguilar recorded that, upon being told about the molestation, Molly, the victim's mother "hugged her daughter and told her she believed her and that she was proud of her for telling the truth." (*Id.*) Exhibit E is a therapy note recording that when the victim asked her therapist, "what would happen if it was a dream," the therapist explained that "disclosing can be very difficult on someone especially when they see all of the commotion it seems to cause." (*Id.* at 12.)  Exhibit R is an encounter note from the social services agency stating, among other things, that Detective Jack Hale was concerned "about Molly continuing to say that B[.] was recanting her story." (Doc. 16-10 at 30.)

None of the exhibits on which Petitioner relies evidence pressure by the State on the

victim to sustain her allegations.  Exhibits A, B and E indicate only that the victim's mother and a therapist provided the victim support on the first day she came forward with the allegations, and the therapist continued to do so.  This does not constitute pressure nor are these people state actors.  Exhibit R indicates concern by a detective that the victim's mother reported the victim had recanted.  There is no evidence that the victim was pressured not to recant by this detective or that any message from the detective was conveyed to the victim.  Petitioner was not prejudiced by counsel's failure to gather this information and present it at trial because there is no factual support for his assertion that the victim was pressured by the State.

Petitioner alleges there were numerous recantations made by the victim and not presented at trial, "to her mother, to counselors, to police, and to her priest" (Paragraph 1).  In support, Petitioner cites evidence that the victim told her therapist "it was a bad dream," and she "had made a terrible mistake" (Paragraph 7, citing Doc. 16-10 at 12).  Petitioner's son provided an affidavit to the PCR court stating that after the first set of allegations were dismissed, he asked the victim if Petitioner had really done what she said and the victim said no she had lied (Paragraph 21).  (Doc. 4, Ex. 3 at Ex. 3.)  Petitioner's son attested that he reported this information to defense counsel but was not asked about it at trial.  (*Id.*)  Evidence of these other recantations would have been cumulative because the victim testified at trial that she recanted her first set of allegations to her mother, telling her it was a dream.  (RT 10/23/02 at 28-29.)  As such, no prejudice resulted from a failure to present it. *See United States v. Schaflander*, 743 F.2d 714, 718 (9th Cir. 1984).

In Paragraph 8, Petitioner alleges the victim wrote in a diary that she "thinks the abuse is a bad dream."  The PCR court found Petitioner failed to sustain his burden regarding this allegation because there was no proof such a diary existed or what counsel's knowledge or actions were in relation to it.  Petitioner has not presented any additional evidentiary support for this allegation.  Therefore, it fails because Petitioner has not established sufficient facts to support it.  Further, this allegation is duplicative of the recantation to which the victim testified at trial – that she told her mother the abuse was a bad dream.  Therefore, the allegation also fails for lack of prejudice.

Petitioner alleges counsel should have presented evidence that the victim asked her mom what would happen to her if she was lying (Paragraphs 5, 6 and 27). This allegation leads to the same inference as the explicit recantations, to which the victim testified at trial. That is, they go to the credibility of the victim's allegations, are cumulative, and denied for lack of prejudice.

The victim recanted to her priest, Father Dan (Paragraphs 1, 26). The PCR court made a factual finding that Petitioner knew about this recantation prior to trial. (Doc. 11, Ex. G at 4.) The Court must defer to that finding because Petitioner has not rebutted it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The PCR court concluded that Petitioner had an obligation to assist his counsel, and he could not hold counsel responsible for his failure to reveal the information. (Doc. 11, Ex. G at 4.) Therefore, the PCR court found that counsel's conduct was not below the standard nor was Petitioner prejudiced because he possessed the relevant information. (*Id.*) Counsel's decisions regarding investigation are properly based upon the information supplied by the defendant, and a defendant's actions are highly relevant in assessing the reasonableness of counsel's actions. *Strickland*, 466 U.S. at 690. The PCR court's ruling was not an objectively unreasonable application of *Strickland*.

Petitioner alleges several other facts that he suggests are connected to pressure on the victim or her recantations, however, they are not intertwined with any of his other assertions. Therefore, the Court addresses each one separately.

In Paragraph 2, Petitioner alleges that, at the time of his arrest, the victim overhead a discussion by police officers that he had violated parole. Petitioner does not connect this factual allegation to any other assertions or demonstrate how he was prejudiced by counsel's failure to introduce this evidence. To the extent Petitioner is suggesting this tainted the victim's view of him, such an assertion is unfounded. The victim testified at trial that she knew Petitioner had been in prison and was on probation, and she knew he was living in a halfway house. (RT 10/23/02 at 44-45.) Also, she testified that she knew Petitioner was a drug user and a drug seller. (*Id.* at 47, 50.) Petitioner has not established a reasonable probability that he would not have been convicted if this evidence had been presented.

In Paragraph 11, Petitioner alleges that exhibit J from the PCR evidentiary hearing

supports his allegation that the victim's mother reported the victim had a dream of being raped by a black woman.  Petitioner contends this document should have been used to (1) impeach the victim when she denied having sexual dreams and (2) establish that this dream took place after the victim recanted the allegations of abuse, therefore, the dream could not have prompted the recantation as suggested by the trial court's ruling on Petitioner's post-trial motion to vacate judgment.  First, the victim's mother testified at trial that the victim told her she had a dream about being raped in the desert by a woman.  (RT 10/24/02 at 62-63.)  The document itself is a therapy report that establishes little more than the mother's testimony – she reported the dream not the victim.  Further, the therapist wrote down that they discussed the word rape and the victim knew it was violent and bad but did not see it as something sexual.  (Doc. 16-10 at 18.)  For these reasons this document would not have been meaningful impeachment and Petitioner was not prejudiced by counsel's failure to discover and use the document for that purpose.

Second, neither the exhibit relied upon by Petitioner, nor the mother's testimony at trial, established when the victim had this dream.  (*Id.*)  Although the therapy report at issue is dated February 29, none of the evidence currently before this Court, including the trial testimony, establishes when the dream took place or when a first recantation occurred.[4]  Thus, Petitioner fails to establish that he was prejudiced by counsel's failure to use this exhibit to establish a timeline of recantations in relation to the dream.  Further, the Arizona Court of Appeals reviewed the trial court's denial of the motion to vacate judgment.  In affirming that decision, the appellate court did not rely on the rape dream; rather, it concluded Petitioner knew about the recantation and additional testimony on the subject would have been cumulative to the victim's own testimony on that topic.  (Doc. 11, Ex. A at 7.)  Petitioner has not established that he was prejudiced by counsel's failure to introduce exhibit J.

In Paragraph 12, Petitioner alleges "no one" discussed the relevance of the fact that the

---

[4]    It is evident that Petitioner considers the victim's statements to the therapist, that the abuse was a bad dream, to be a recantation.  However, review of the therapy notes indicate the therapist  considered this statement to be a coping mechanism due to guilt not a statement that she was not molested.  (Doc. 16-10 at 12.)

victim witnessed a murder in May 1996, and suggests this may have something to do with pressure on the child.  The cited exhibit is a record from the social service agency documenting that the victim's mother reported the victim had witnessed a fatal shooting.  (Doc. 16-10 at 24.) Petitioner does not articulate the relevance of this exhibit, assert what counsel failed to do, or show how he was prejudiced by any alleged failing.  This cursory allegation is entirely insufficient to state an independent claim.  To the extent this is part of the overall claim that counsel failed to investigate and prepare, Petitioner has not alleged nor proven any prejudice.

The entirety of Claim I fails because Petitioner has not established prejudice.  Although Petitioner's expert at the Rule 32 hearing testified that, in his opinion, it was "below the standard" for Petitioner's trial counsel to fail to investigate and present this evidence (RT 4/28/02 at 33-38), Petitioner has not affirmatively shown how such failures prejudiced him. The PCR court's denial of this claim was not an objectively unreasonable application of *Strickland*.

### Claim II: Trial counsel failed to interpret and apply the rape shield laws which precluded evidence bearing on the victim's credibility (Paragraphs 9, 10, 13-17, 19, 20, and 22)

Petitioner argues that his attorney failed to "investigate, read, and interpret relevant case law" regarding applicable exceptions to Arizona's rape shield laws (Paragraph 22). Specifically, Petitioner argues that his attorney's failure to present and argue such exceptions resulted in the exclusion of admissible evidence that could have provided an explanation for the victim's testimony, was relevant to her credibility, and would have changed the verdict.

Prior to trial, counsel moved to admit evidence that (1) the victim was molested by a cousin named Ernest, which involved her being forced to put her mouth on his penis, and (2) she was molested by another cousin.  (Doc. 11, Ex. R at 2.)  Counsel sought to introduce the evidence to establish a basis for the victim's nightmares (of being raped by a woman and being molested by Petitioner), her prior knowledge of sexual subjects, and her fabrication against Petitioner.  (*Id.*)  Petitioner argued it was admissible because it was relevant and the probative value was not outweighed by the prejudice, and it was not subject to exclusion under Arizona state statute § 13-1421 because it did not impugn the victim's chastity.  (*Id.* at 1-4.)  At oral argument on the motion, the court asked counsel to address *State v. Oliver*, 158 Ariz. 22, 760

1   P.2d 1071 (1988).  Counsel argued that the case comported with the long-standing rule that the

2   court should balance relevant evidence against possible prejudice.  (RT 10/22/02 at 3.)  The

3   court found the first allegation of a prior molest was not relevant because the allegations against

4   Petitioner did not involve fellatio, and, if relevant, the evidence was more prejudicial than

5   probative.  (*Id.* at 13-14.)  The court precluded the second allegation of prior molest, finding it

6   was not clearly proven as a molest and that the specific allegations were not remotely relevant

7   to the charges against Petitioner.  (*Id.* at 13.)  The court allowed introduction of the victim's

8   dreams of a sexual nature.  (*Id.* at 14.)

9       Petitioner argues the evidence was admissible pursuant to *Oliver* and that counsel failed

10  to so argue.  A child molestation victim's prior sexual history is generally inadmissable under

11  Arizona law.  *Oliver*, 158 Ariz. at 26, 27, 760 P.2d at 1075, 1076 (citing *State ex rel. Pope v.*

12  *Superior Court*, 113 Ariz. 22, 28, 545 P.2d 947, 952 (1976)).  In *Oliver*, the court held that trial

13  courts should determine if evidence of the victim's prior history is relevant under rule 401 and,

14  if it is, the court should determine if its probative value is outweighed by unfair prejudice under

15  Rule 403.  *Id.* at 28, 760 P.2d at 1077.  The court went on to hold that if a defendant raises a

16  defense of fabrication and the victim is so young that a jury might conclude the only basis for

17  the victim's sexual knowledge is molestation by the defendant, then the victim's prior sexual

18  history is relevant to rebut that inference.  *Id.*  If it is determined to be relevant, trial courts are

19  encouraged to determine to what prior sexual act(s) the victim has been exposed and if it is

20  sufficiently similar to the acts charged against the defendant to provide a basis for the victim

21  to fabricate the charge.  *Id.*

22      The PCR court noted that counsel argued the prior molests of the victim were admissible

23  to show prior sexualization of the victim, which is within the *Oliver* exception to the rape shield

24  law.  (Doc. 11, Ex. G at 6.)  However, the court ruled the evidence inadmissable after weighing

25  its probative value against its potential for prejudice.  (*Id.*)  Based on the record, the PCR court

26  found Petitioner had failed to carry his burden.  (*Id.*)

27      The PCR court's ruling was not an objectively unreasonable application of *Strickland*.

28  First, Petitioner cannot demonstrate counsel's performance was inadequate.  Counsel argued

1  that prior molestations of the victim should be admitted to prove sufficient knowledge to

2  fabricate the allegations against Petitioner.  This is the exception under *Oliver* upon which

3  Petitioner now relies.  Second, to the extent counsel did not discuss *Oliver* in his written motion,

4  Petitioner was not prejudiced because counsel and the trial court directly addressed the

5  applicability of *Oliver* to Petitioner's case.  Further, *Oliver* directs trial courts to balance the

6  probative value against the prejudicial impact of a victim's prior sexual knowledge, which is

7  exactly the argument counsel made in his written motion.

8      Because the trial court precluded admission of this evidence, counsel's performance was

9  not below a reasonable standard for failing to present evidence that the victim had been

10 previously molested (Paragraphs 9, 13-15, and 19).  The allegations in Paragraphs 15 and 19

11 include an incident in which the victim was naked on top of a male family member, which

12 appears to be the second allegation of molest that counsel tried to introduce at trial (*see* RT

13 10/22/02 at 8).

14     Petitioner also alleges counsel should have presented evidence through the victim's

15 mother that the victim was exposed to sexual content on television and was over sexualized

16 (Paragraphs 10, and 19).  Counsel presented evidence that the victim had a rape dream.  Further,

17 he established on cross-examination that the victim knew the term "jacking off" as slang for

18 masturbation, and she knew the words penis and vagina and those were things she could see on

19 television.  (RT 10/23/02 at 57-58.)  In light of this specific evidence that counsel elicited at

20 trial, Petitioner was not prejudiced by counsel's failure to present general evidence that the

21 victim was "sexualized."

22     Further, Petitioner alleges counsel should have presented other evidence about the

23 victim:  she had an active fantasy life and imaginary friends (Paragraph 16); the victim's mother

24 had a boyfriend who "asked to be alone with the victim," stalked the mother, and was kinky

25 (Paragraph 17); and the victim experienced hallucinations (Paragraph 20).  First, Petitioner

26 makes no connection between the victim's "fantasy life" and hallucinations, and the charges

27 against Petitioner.  At trial, Petitioner established that the victim was experiencing nightmares

28 prior to the charged molestation, that she had a dream she was raped by a woman, and that she

recanted the first set of allegations against Petitioner claiming the molestation was a dream. The victim's dreams were relevant and admitted. However, Petitioner did not present at trial, nor does he now, any connection between the victim's imaginary friends or hallucinations and the charged molestation. Thus, he was not prejudiced by counsel's failure to introduce such evidence. Next, Petitioner does not allege, let alone prove, that the mother's boyfriend was ever alone with the victim or spent any time with her. Thus, there is no relevance to the evidence related to the victim's mother's boyfriend.

In sum, Petitioner fails to establish that the PCR court's denial of his claims – that counsel was ineffective for failing to properly argue an exception to the rape shield law (Paragraph 22) or to introduce evidence related to the victim's prior molestations, sexualization, fantasy life, and hallucinations (Paragraphs 9, 10, 13-17, 19, and 20) – was an objectively unreasonable application of *Strickland*.

### Claim III: Trial counsel failed to challenge and rebut prosecution expert Wendy Dutton (Paragraphs 23-25, and 29-32)

Petitioner makes several allegations regarding trial counsel's handling of the government's expert witness, Wendy Dutton. These claims fall into two groups. In the first group of assertions, subgroup (a), Petitioner appears to be arguing that counsel should have sought to preclude Dutton's testimony in entirety because it was speculative and without foundation (Paragraphs 23, 24, 25 and 29 (in part)). In the second group of assertions, subgroup (b), Petitioner argues that counsel failed to investigate and prepare for Dutton's testimony, including hiring a defense expert (Paragraph 32) and, if he had prepared, he could have: attacked her testimony as lacking foundation (Paragraphs 23, 24, 25 and 29 (in part)); impeached her with literature regarding false reporting (Paragraph 30); and explored the idea of a victim recanting false allegations (Paragraph 31). Respondents do not argue exhaustion with respect to this claim, and review of Petitioner's PCR petition indicates that this claim was fairly presented in state court. (Doc. 11, Ex. L.)

*Subclaim (a)*

Petitioner alleges trial counsel should have objected to Dutton's testimony in entirety

1   because it lacked foundation.  The PCR court did not rule on this portion of the claim, therefore,

2   the Court's review is de novo.  *Pirtle*, 313 F.3d at 1167.

3          Petitioner has made no showing that Dutton's testimony was not admissible under

4   Arizona law and that a challenge by counsel would have been successful.  To prevail on a claim

5   that counsel was ineffective for failing to move for the exclusion of evidence, a defendant must

6   show that he was prejudiced because such a motion would have been meritorious (and if the

7   evidence had been excluded there is a reasonable probability it would have changed the verdict).

8   *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *James v. Borg*, 24 F.3d 20, 27 (9th Cir.

9   1994) ("failure to make a futile motion does not constitute ineffective assistance").  The Arizona

10  Court of Appeals ruled that Dutton's testimony was admissible under Arizona law:

> Testimony about general social and behavioral science principles is admissible
> to "assist the jury in deciding a contested issue, including issues pertaining to
> accuracy or credibility of a witness' recollection or testimony." *State v. Lindsey*,
> 149 Ariz. 472, 473, 720 P.2d 73, 74 (1986).  In this case, the victim's credibility
> was a central issue based on evidence of her recantation of the allegations to her
> mother, and Dutton explained issues beyond the jury's personal experience so
> that it could put the credibility issue in context.  Dutton's testimony concerned
> only general behaviors and did not go into the specific facts of this case.  It was
> therefore admissible.  *See id.*; *see also State v. Curry*, 187 Ariz. 623, 628-29, 931
> P.2d 1133, 1138-39 (App. 1996) (considering similar expert testimony by Dutton;
> finding testimony relevant and not unfairly prejudicial).

17  (Doc. 11, Ex. H at 4.)

18         Petitioner has not argued nor proven that Dutton's testimony would have been or should

19  have been excluded under Arizona law, and the court of appeals ruling forecloses such an

20  argument.  Because a motion to preclude this evidence would not have been successful,

21  Petitioner was not prejudiced by counsel not so moving.  Therefore, Claim IV(a) fails.

22         *Subclaim (b)*

23         Petitioner alleges generally that counsel failed to investigate and prepare for Dutton's

24  testimony.  The PCR court found Petitioner had not established that defense counsel failed to

25  investigate Dutton or interview her prior to trial.  (Doc. 11, Ex. G at 3-4.)  At the PCR

26  evidentiary hearing, Petitioner's trial counsel testified that he did not recall whether he

27  interviewed Dutton prior to trial (RT 4/28/08 at 14) and Petitioner has set forth no other

28  evidence to establish what counsel did or did not do to prepare for Dutton's testimony.  Thus,

Petitioner fails to establish that the PCR court's finding that counsel's performance was not deficient was objectively unreasonable. Below, the Court addresses the specific, albeit minimal, allegations related to this claim.

To the extent Petitioner argues counsel should have challenged Dutton's testimony as speculative and not related to the facts of the case, counsel did that on cross-examination. Counsel clarified with Dutton that she was "talking in generalities," was not "talking about any specifics in this particular case," and that she had not examined the victim or spoken to any of the fact witnesses, and did not know any facts of the case. (RT 10/24/02 at 20-21.) The jury was not misled to believe that each of the general factors to which Dutton testified applied to the particular case; rather, she was clear that she did not know the facts of the case.

Further, some of the generalities to which Dutton testified that Petitioner challenges as unfounded, in fact were implicated in the case. Thus, Petitioner's argument that they were speculative because there was no evidence of those generalities is not accurate. For example, Petitioner argues there was no evidence at trial relevant to Dutton's testimony about piecemeal disclosure by the victim, or that the victim was embarrassed or disbelieved, which can lead to the child not disclosing all the abuse. (*Id.* at 12-13.) Several pieces of testimony related to these "generalities." The victim testified that she didn't discuss the abuse because she knew it was wrong but it was her dad. (RT 10/22/02 at 17.) She also said she asked her mom not to report the abuse because she didn't want anyone to know. (*Id.* at 34-35.) The victim did not promptly disclose the abuse, but eventually disclosed at least some of it to a counselor. (*Id.* at 26.) After other abuse occurred, she did not tell her mother right away. (*Id.* at 30.) Also on cross-examination, counsel raised questions about details to which the victim testified but had not provided to the police during her taped interview. (*Id.* at 55-58.) Thus, testimony at trial indicated the victim was reluctant to disclose the abuse, did not want others to know about it, and may not have revealed it all at one time. Also, as discussed below, the victim's mother did not want to believe the abuse occurred.

Similarly, Petitioner questions the relevance of Dutton's testimony that several factors may influence a victim to recant, including pressure from family, stress from the prospect of

testifying in court, or other consequences of the disclosure.  (RT 10/24/02 at 16.)  The victim testified that she felt bad for disclosing the abuse because the defendant got removed from her house and the other members of the family were upset.  (RT 10/22/02 at 27-28.)  She also testified that her mom kept asking her and hoping it was a dream and she eventually said it was a dream so the defendant could move back in with the family.  (*Id.* at 28-29.)  Further, the victim's mom testified that when the victim told her about subsequent abuse the victim did not want her to tell anyone and that she didn't want to go through with the prosecution.  (*Id.* at 70-71.)  This testimony indicates the victim did feel pressure to recant by her family and the removal of the defendant from her home, and that she did not want to go through with a prosecution.  Because Dutton was not attempting to testify about the specifics of Petitioner's case, which counsel emphasized on cross-examination, there was no basis on which to challenge it as speculative.  Further, the specific areas of testimony that Petitioner challenges as speculative were in fact implicated by testimony in the case and were relevant to the prosecution's evidence.  Petitioner fails to establish he was prejudiced by counsel not challenging Dutton's testimony as speculative.

Petitioner contends that his counsel could have impeached Dutton with literature about the predominance of false reporting, specifically one study finding that 35% of abuse allegations are false and one finding that 50% of such allegations are false.  Dutton was not subject to impeachment about the prevalence of false reporting because she did not testify contrary to the facts cited by Petitioner.  (RT 10/24/02 at 3-44.)  On cross-examination Dutton acknowledged that children lie about child abuse and she discussed the primary reasons children make false allegations.  (*Id.* at 28-36.)  Counsel also got Dutton to acknowledge that a child could maintain a false abuse allegation for a long period of time.  (*Id.* at 35-36.)

Petitioner also contends, based on collateral evidence, that Dutton defines a "recantation" as recanting a true allegation of abuse, and that counsel failed to explore false allegations and a child retracting a false statement to relieve their guilt.  As discussed above, counsel did explore with Dutton the fact that children make false allegations of abuse and the most common reasons for those allegations.  (*Id.* at 28-36.)  Counsel did not explore the possibility that a child

may retract a false allegation to unburden themselves from the lie.  However, as discussed with respect to Claim I, counsel was unaware of that evidence because Petitioner had not disclosed that to him.  Counsel's performance cannot be found unreasonable for failure to act on information known to the defendant and not revealed to counsel.  The PCR court found that cross-examination is a matter of trial strategy left to counsel and Petitioner did not establish that counsel's cross-examination regarding recantation and false allegations constituted error.  (Doc. 11, Ex. G at 3, 4.)  This finding was not objectively unreasonable.

Finally, Petitioner argues counsel should have consulted with an expert and possibly called one to testify at trial.  At the PCR evidentiary hearing, the expert attorney testified that he believed defense counsel required an expert to assist in the case to counter Dutton and address the issue of recantations.  (RT 4/28/08 at 29-30.)  While this testimony was relevant to counsel's performance, the PCR court found Petitioner failed to prove that counsel's performance was deficient for not consulting an expert because Petitioner did not put on evidence regarding what an expert could have testified to that would have impacted the verdict.  (Doc. 11, Ex. G at 4.)  As noted by the PCR court, the attorney that testified at the evidentiary hearing was not qualified to proffer the potential opinions of an expert on child abuse and recantation.  Thus, Petitioner fails to  *affirmatively* prove that he was prejudiced by counsel's failure to consult with an expert.  *See Strickland*, 466 U.S. at 693.  The PCR court's conclusion that Petitioner failed to demonstrate deficient performance or prejudice relating to counsel not consulting an expert (Doc. 11, Ex. G at 4) was not objectively unreasonable.

Claim III is without merit.

**Claim IV: Trial Counsel failed to object to admission of hearsay (Paragraph 33)**

Petitioner alleges trial counsel failed to object to the admission of out-of-court statements by the victim, which the prosecution introduced through the testimony of witness Nielsen. Specifically, he asserts that Nielsen testified that the victim told him, "1) she and Mr. Vega made a deal that she could use makeup in exchange for touching his private parts. 2) that the alleged victim spoke of touching her private parts.  10/23/02, pp. 132-135" (Paragraph 33). Respondents addressed this claim on the merits.  However, a close review of this claim as raised

1  in the PCR petition reveals it was not fairly presented to the state courts.  In his PCR petition,

2  Petitioner argued that counsel was ineffective for failing to respond to prosecution motions

3  seeking the admission of unspecified hearsay.  (Doc. 4, Ex. L at 13.)  In a separate claim of his

4  PCR petition, Petitioner argued that the admission of hearsay statements at trial (those alleged

5  in Paragraph 33 of the Amended Habeas Petition) denied him his right to confrontation.

6  Petitioner never argued in state court that his counsel was ineffective for failing to object to the

7  admission of this hearsay evidence at trial on October 23, 2002.  Thus, this claim was never

8  fairly presented.  However, because Respondents did not argue exhaustion as to this claim, the

9  Court will address, and dismiss it, on the merits.  *See* 28 U.S.C. § 2254(b)(2).

10        The relevant trial testimony reads as follows:

11        Q:      Can you tell us, to the best of your recollection, what she told you about

12               this tickling event?

13               MR DARBY:        Objection. That calls for hearsay

14               THE COURT:       Overruled  You may answer

15               THE WITNESS:     She told me that the night before that [sic] she had

16        basically made an agreement with Peter Vega, the stepfather

17               She asked him to put makeup on his face and he agreed to do so if she

18        would allow him to touch her private areas

19        Q      (By Mr Roach):     And did he actually, or did she report he actually

20        touched her private area?

21               MR. DARBY:       Objection  Calls for hearsay

22               THE COURT:       Overruled.

23               . . . .

24        Q:      Can you tell me what it was she told you about being touched by Peter

25        Vega?

26               MR. DARBY:       Objection

27               THE COURT:       Prior inconsistent statement  You may answer.

28  (RT 10/23/02 at 133-34.)

1   As reflected in the trial transcript, counsel objected three times to the admission of the

2   testimony as hearsay.  The trial court overruled the objections, and the PCR court confirmed its

3   ruling that the evidence was admissible pursuant to a hearsay exception.  (Doc. 11, Ex. G at 8.)

4   Thus, there is no factual support for Petitioner's allegation that counsel was ineffective.

5   Petitioner has not established that his counsel's performance was deficient or that he was

6   prejudiced.  Claim IV fails.

7   **Claim V:  Trial counsel failed to object to commentary on his right to remain silent and appellate counsel failed to raise claim on appeal (Paragraph 34)**

8
9   Petitioner argues his trial counsel was ineffective for failing to object to witness Nielsen

10  testifying that Petitioner did not deny the allegations against him, because that amounted to a

11  comment on his right to remain silent in violation of his constitutional due process rights.  He

12  further alleges that his appellate counsel was ineffective for failing to argue that this testimony

    violated his right to due process.

13  Review of the transcript makes clear that Petitioner's due process rights were not

14  violated by Nielsen's testimony.  Nielsen testified that, before questioning Petitioner, he notified

15  him of his *Miranda* rights "line by line," including his right to remain silent.  (RT 10/23/02 at

16  135-36.)  Petitioner acknowledged that he understood those rights and was willing to talk to the

17  officer.  (*Id.* at 136.)  Nielsen testified that, during the subsequent questioning, Petitioner neither

18  denied nor admitted the allegations against him.  (*Id.* at 137.)  Rather, Nielsen stated that when

19  Petitioner was asked about the molestation allegations, he provided explanations for them.  (*Id.*)

20  The Arizona Court of Appeals found that because Petitioner waived his *Miranda* rights

21  and did not assert his right to remain silent, Petitioner's due process rights were not implicated.[5]

22  (Doc. 11, Ex. H at 5-6.)  The court held that, therefore, counsel's failure to object and raise the

23

24  _____

25      [5]    The court of appeals also held that Nielsen's testimony was admissible under state

26  evidentiary law.  (Doc. 11, Ex. H at 6.)  Petitioner's claim in this Court is based solely on
    counsel's failure in light of the alleged inadmissibility of the testimony pursuant to the Due

27  Process clause; therefore, the Court does not address its propriety under state law.  Further, this
    Court will not review a state court's determinations on state law.  *See Estelle v. McGuire*, 502

28  U.S. 62, 67 (1991); *Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).

1   issue on appeal was neither deficient nor prejudicial.  (*Id.*)

2          Nielsen testified that Petitioner was informed of his right to silence and he waived it.

3   Petitioner has not disputed the accuracy of that testimony.  "[A] defendant who voluntarily

4   speaks after receiving Miranda warnings has not been induced to remain silent.  As to the

5   subject matter of his statements, the defendant has not remained silent at all."  *Anderson v.*

6   *Charles*, 447 U.S. 404, 408 (1980).  Nielsen testified to the substance of Petitioner's statements

7   when questioned about the molestation, that he neither admitted nor denied the allegations but

8   he did provide explanations.  This is not a comment on silence, a right that Petitioner did not

9   invoke.  Because this testimony was not violative of Petitioner's due process rights, an objection

10  would not likely have been sustained nor was there a reasonable probability of prevailing on

11  appeal.  Therefore, trial counsel's lack of objection and appellate counsel's decision not to raise

12  the claim on appeal were not deficient nor was Petitioner prejudiced.  *See Matylinsky v. Budge,*

13  577 F.3d 1083, 1094 (9th Cir. 2009) (noting that, if an objection would have been futile,

14  petitioner fails both *Strickland* prongs) (*citing Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th

15  Cir. 1989).  The state appellate court's denial of this claim was not objectively unreasonable.

16         **Conclusion**

17         The Court's close review of the Amended Petition reveals that Petitioner made no

18  substantive allegation of prejudice with respect to most of the alleged deficiencies of counsel.

19  "When a defendant challenges a conviction [based on counsel's ineffectiveness], the question

20  is whether there is a reasonable probability that, absent the errors, the factfinder would have had

21  a reasonable doubt respecting guilt."  *Id.* at 695.  In answering that question, a reviewing court

22  necessarily considers the strength of the state's case.  *See Allen v. Woodford,* 395 F.3d 979, 999

23  (9th Cir. 2005) ("even if counsel's conduct was arguably deficient, in light of the overwhelming

24  evidence of guilt, [the petitioner] cannot establish prejudice"); *Johnson v. Baldwin*, 114 F.3d

25  835, 839-40 (9th Cir. 1997) (where state's case is weak, there is a greater likelihood that the

26  outcome of the trial would have been different in the absence of deficient performance).

27         At the end of its analysis on all of the IAC claims raised by Petitioner, the PCR court

28  found that, in light of the following trial evidence against Petitioner, he was not prejudiced by

1   any of counsel's actions:

2       B.'s testimony; the fact that Petitioner failed to deny the molests to both B.'s
        mother and the police; and that B.'s brothers each provided facts that provided
3       corroboration as to elements of her testimony.  As an aside, this Court notes that
        the uncorroborated testimony of a victim is enough to sustain a conviction for
4       child molestation, "unless the story is physically impossible or so incredible that
        no reasonable person could believe it." *State v. Munoz*, 114 Ariz. 466, 469, 561
5       P.2d 1238, 1241 (App. 1976).  B.'s story was far more than that told in *Munoz*.
        Further support was provided by other witnesses, including her brothers, and the
6       examinations of Molly Vega and Petitioner himself.

7   (Doc. 4, Ex. G at 7 (footnote omitted).)  Petitioner has not even attempted to establish that this

8   finding was objectively unreasonable.  Therefore, in addition to all of the specific arguments

9   regarding counsel's performance and prejudice addressed above, Petitioner is not entitled to

10  relief because he failed to prove that the state court's finding of no prejudice was objectively

11  unreasonable.

12                                      **RECOMMENDATION**

13          Based on the foregoing, the Magistrate Judge recommends that the District Court

14  DISMISS the Amended Petition for Writ of Habeas Corpus (Doc. 4).

15          Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

16  written objections within fourteen days of being served with a copy of the Report and

17  Recommendation.  If objections are not timely filed, they may be deemed waived. If objections

18  are filed, the parties should use the following case number:  **CV 09-473-TUC-CKJ.**

19          DATED this 19th day of October, 2010.

20

21

22

23

24                                      _____
                                              D. Thomas Ferraro
25                                         United States Magistrate Judge

26

27

28