**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PEDRO IMPERIAL VEGA,<br>            Petitioner,<br>vs.<br>CHARLES L. RYAN, *et al.*,<br>            Respondents. | No. CIV 09-473-TUC-CKJ (DTF)<br><br>**ORDER** |

On October 19, 2010, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (Doc. 17) in which he recommended that the Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody filed by Pedro Imperial Vega ("Vega") be dismissed. The magistrate judge advised the parties that written objections to the Report and Recommendation were to be filed within fourteen days of service of a copy of the Report and Recommendation pursuant to Fed.R.Civ.P. 72(b)(2). Vega has filed an objection. Respondents have not filed a response.

*Report and Recommendation*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *See also Schmidt v. Johnstone*, 263

F.Supp.2d 1219, 1226 (D.Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir.2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made).

With the exception of the magistrate judge's reordering of Vega's claims, no objection has been made to the factual and procedural background, including the conclusions reached regarding exhaustion and procedural default. Further, no objection has been made to the magistrate judge's discussions regarding the standard for relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the two-prong test to establish a claim of ineffective assistance of counsel. The Court adopts these portions of the Report and Recommendation, with the exception of the magistrate judge's conclusion that the claim that trial counsel was ineffective for failing to investigate and present evidence that a third person, Ernest, committed the crimes.[1] Further, the Court adopts those portions of the Report and Recommendation to which there is no specific objection.

*Organization of Report and Recommendation*

Vega asserts that the magistrate judge's reordering of Vega's 34 instances and claims of ineffective assistance of counsel claims into "somewhat logical bundles," Objection, p. 1, results in isolating the claims. The Court does not find the reorganization restricts the Court's ability to "consider the totality of the evidence." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While the Court agrees with Vega that, when considering whether he was prejudiced by deficient performance of counsel, the prejudice must be considered in light of the strength of the prosecution's case, *Johnson v.*

---

[1] As the Court discusses *infra*, the claim that trial counsel was ineffective for failing to investigate and present evidence that Ernest committed the crimes was not presented to the state courts.

- 2 -

*Baldwin*, 114 F.3d 835, 838 (9th Cir. 1997), the Court finds the reorganization permits the Court to consider the claims in a logical and cohesive manner. Indeed, the grouping of like claims facilitates the Court's consideration of the cumulative effect of the alleged deficiencies. The Court adopts this portion of the Report and Recommendation.

However, the Court recognizes that it is not clear in what context Vega asserts that trial counsel was ineffective for failing to investigate and present evidence regarding the victim's dreams, imaginary friends, and hallucinations. The Court will address these claims separately (i.e., applicability not limited to rape shield laws) as set forth by the magistrate judge.

*Exhaustion and Procedural Default – Fair Presentation*

To the extent that Vega is arguing that trial counsel was ineffective for failing to assert that a third person (Ernest) committed the offenses against the victim, this issue was not presented to the state courts. Indeed, this claim was not presented in the Petition for Post-Conviction Relief. Although the expert testified regarding this incident, it was in the context of a recantation, as something to be submitted to an expert, and possibly as a basis for a *Oliver/Pope* exception.[2] *See State v. Oliver*, 158 Ariz. 22, 760 P.2d 1071 (1988); *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946 (1976).

The Ninth Circuit Court of Appeals has determined that new bases for ineffective assistance of counsel claims that were not raised in the state proceedings are not exhausted. *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005); *see also Date v. Schriro*, 619 F.Supp.2d 736 (D.Ariz. 2008). The Court finds this claim was not fairly presented to the state courts and, therefore, this claim has not been exhausted.

Moreover, if Vega would now be procedurally barred from presenting this issue to the

---

[2]Further, it appears that trial counsel attempted to introduce this evidence at trial. R.T. 10/22/02, p. 8.

- 3 -

state courts, this claim would be technically exhausted. If Vega were to fairly present this issue in a subsequent Petition for Post-Conviction Relief, such presentation would be untimely. Moreover, this claim does not qualify for any of the timeliness exceptions:

> (d) The person is being held in custody after the sentence imposed has expired;
> (e) Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence . . . ;
> (f) The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> (g) There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> (h) The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Rules 32.1 and 32.4(a), Ariz.R.Crim.P. Such a new petition, therefore, would be subject to summary dismissal. *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzales*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion). This claim is technically exhausted and, therefore, procedurally defaulted.[3] *Park v. California*, 202 F.3d 1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where prisoner has not raised his claim in the state courts and the time for doing so has expired).

Additionally, Vega has failed to establish (1) cause sufficient to excuse his procedural default – any impediments preventing Vega from complying with Arizona's procedural rules,

---

[3]Because this claim is procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claim is of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claim is precluded pursuant to *Cassett*. Moreover, the procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir. 2004); *see e.g., State v. Rosario*, 195 Ariz. 264, 987 P.2d 226 (App. 1999) (where petition did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995) (Rule 32.4(a) was amended to "address potential abuse by defendants caused by the old rule's unlimited filing periods").

- 4 -

*Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), (2) prejudice – any constitutional violation so basic as to infect Vega's entire proceedings with error, *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), or (3) fundamental miscarriage of justice that no reasonable juror could find him guilty, *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Vega's procedural default cannot be excused. The Court will deny this claim as procedurally defaulted.

*Objections Regarding Claim I: Ineffective Assistance of Counsel for Failing to Investigate and Present Evidence*

Vega asserts that trial counsel was ineffective for failing to investigate and present evidence that had been discovered by a former attorney and the former prosecutor. The former attorney's notes indicate "(1) that the complaining witness recanted to a priest, Father Dan McLaughlin because she 'wanted to get this off my chest.' (2) that Mr. Vega's mother in law was an alibi witness for him in July, 1995 and (3) that the child also asked her mother: "Mom what if I was lying what would they do next?" Objection, p. 3. Similarly, Vega argues that the former prosecutor "found there to be no reasonable probability of success in obtaining a conviction due to the victim's prior molests (no evidence of this was presented at trial by trial counsel), acting out sexually with others (no evidence presented by trial counsel as to this issue either) the alleged victim's recantation claiming it was a dream, and a psychologist's opinion that the prosecution would be counterproductive." Objection, p. 4. The case was dismissed by the former prosecutor.[4]

---

[4] The record indicates that the former prosecutor could not recall why the case was dismissed: "The prosecutor noted in his file at that time, without elaboration, 'recantations from the beginning that the child still [maintains].' Presumably on that basis, but for reasons he could no longer specifically recall, the prosecutor recommended that the state case be dismissed. That case apparently was dismissed; but this case later was filed." Amended Petition, September 12, 2005, Court of Appeals Decision, pp. 5-6; *see also* Supplement to Answer, Ex. Y, p. 30. The Court notes Vega has not presented any authority that prosecutorial discretion differences with a former prosecutor are admissible at trial.

- 5 -

*Evidence of Recantation to Father Daniel P. McLaughlin*

Vega asserts that the magistrate judge improperly discarded and disregarded evidence that the victim recanted to Father Daniel P. McLaughlin ("Father Dan"), that the former prosecutor had dismissed the charges, and erred in determining that counsel exercised due diligence even though counsel failed to learn of the recantation from former counsel. In addressing whether trial counsel provided ineffective assistance, the post-conviction court stated *inter alia*:

> 5. Petitioner presents fact-intensive issues as to counsel's performance, and, because of this, the Court believes it necessary to detail the events at trial. Preliminarily, the Court notes that both Petitioner and the victim testified, allowing the jury to weigh Petitioner's credibility against that of B . . .
>
> * * * * *
>
> 7. During trial, the victim testified that she recanted the first set of allegations to her mother. Petitioner himself was aware of these recantations. Petitioner alleges that [trial counsel] was never made aware that this recanting occurred. On December 9, 2002, [trial counsel] filed a Motion to Vacate Judgment, in which he set forth the entire history of the victim's recantations as well as the convoluted route the case took through the federal and state court systems. In his motion, counsel further specifically noted the reasons for which the current Superior Court pro tempore Howard Fell (then a deputy Pima County Attorney, and the prosecutor in CR - 55329) dismissed the original case, in part apparently due to the recantations known to the Petitioner's former defense attorneys. This Court heard evidence on this motion on January 27, 2003, including testimony from Father Daniel P. McLaughlin, Denise Shepard, Ralph Ellinwood, and Pro Tempore Judge Fell, and considered the records and pleadings before it as well as said testimony prior to entering a denial of the motion on February 10, 2003. This Rule 32 Petition followed. The Court held oral argument on the Petition on April 28, 2008, at which Petitioner raised additional issues beyond the general scope of the Petition; the Court will address those issues in conjunction with addressing those that were fully briefed prior to the hearing.

Amended Petition, June 12, 2008, Minute Entry, pp. 2-3. As to the claim that trial counsel was ineffective for failing to investigate and present evidence of the recantation to Father Dan, the post-conviction court stated:

> 4. Next, Petitioner alleges that trial counsel provided ineffective assistance in that he failed to investigate the victim's recantation to "Father Dan." This Court, at trial determined the *Petitioner himself* was aware of the recantation. . . The Court declines to find post-conviction relief is appropriate on this ground, given that a defendant is responsible for assisting counsel with his defense. It is illogical and unreasonable to hold [trial counsel] responsible for Petitioner's failure to divulge such information to him. *State v. Saenz,* 197 Ariz. 487, 4 P.3d 1030 (App. 2000). Clearly, counsel's performance did not fall below the standard, and Petitioner cannot have been

prejudiced, as he was aware of the recantation and (sic) himself, failed to reveal it to his counsel.

Amended Petition, June 12, 2008, Minute Entry, p. 4.[5]

Vega asserts that a lawyer always has a duty to independently investigate even an implausible or "incredibly lame" defense put forth by the defendant. *Johnson ve. Baldwin*, 114 F.3d 835, 838, 840 (9th Cir. 1997) ("`The prejudice from failing to investigate the alibi and confer more fully with petitioner is not avoided by the fact the petitioner misinformed his attorney.'"). Vega further asserts that there is no evidence that he withheld anything from counsel or mislead the lawyer in any way. Rather, Vega asserts that counsel failed to exercise due diligence and was deficient for failing to question Vega regarding this important issue in the case. The Ninth Circuit has stated:

> Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. This includes a duty to investigate the defendant's "most important defense," [*Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)], and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir.1999). However, "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted) . . . Furthermore, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986).

*Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001). Vega argues that trial counsel ignored red flags (e.g., two previous dismissals) and provided deficient assistance to Vega.

The highly deferential standard used by this Court requires this Court to determine if the state court decision was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or was based on

---

[5]The Court of Appeals of Arizona stated, "Here, in a detailed minute entry, the trial court clearly and correctly addressed the merits of Vega's first three claims of ineffective assistance of counsel[, including the claim regarding the recantation to Father Dan,] . . . Seeing no reason to repeat the trial court's analysis here, we adopt its ruling on these issues." Answer, Ex. H, p. 3.

an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *See e..g., Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003). The state court received evidence and argument regarding the recantation to Father Dan during the Motion to Vacate proceedings and the Rule 32 proceedings. The post-conviction court's conclusion that, "given that a defendant is responsible for assisting counsel with his defense[,] [i]t is illogical and unreasonable to hold [trial counsel] responsible for [Vega's] failure to divulge such information to him[,]" Amended Petition, June 12, 2008, Minute Entry, p. 4., was not contrary to or involved an unreasonable application of clearly established law. Further, it was not an objectively unreasonable determination of the facts in light of the evidence presented to the state court. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.2003) (reversal is warranted under "clearly erroneous" provision of AEDPA only if the state court's application of federal law is objectively unreasonable). As stated by the magistrate judge, "[c]ounsel's decisions regarding investigation are properly based upon the information supplied by the defendant, and a defendant's actions are highly relevant in assessing the reasonableness of counsel's actions. *Strickland*, 466 U.S. at 690." Report and Recommendation, p. 14. Given the reasons the Arizona courts stated for not granting relief, this Court does not find that the state courts' decision involved an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d) (habeas relief not available with respect to a claim unless the state courts' adjudication of it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"); *see also Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

*Recantations as Cumulative*

Vega disputes the conclusion of the magistrate judge that trial counsel's failure to present recantations was harmless because they were simply cumulative. Vega asserts that because different instances of recantations were not presented, the evidence was not simply

- 8 -

cumulative. Indeed, Vega argues that the more different stories told by a witness, the less probative value is attached to her testimony and that the defense had a right and duty to attack the credibility of the only substantive witness against Vega. Vega also asserts evidence that the victim asked her mother what would happen if she was lying is not cumulative of other recantations.

In discussing whether the recantations constituted newly discovered evidence on appeal, the appellate court stated:

> . . . It was undisputed that B. had recanted her accusations about the 1995-96 incidents to several people, and in view of her own admission of that fact at trial, we cannot say that the priest's proffered testimony would have had an "effective influence or bearing on the decision of the case." *Id.* . . .
>
> \* \* \* \* \*
>
> . . . B. admitted having recanted her accusations to others, and the record does not establish a reasonable probability that an additional witness to that fact would have changed the jury's verdicts. *See State v. Serna*, 167 Ariz. 373, 375, 807 P.2d 1109, 1111 (1991) (trial court did not abuse its discretion in denying defendant's motion to vacate based on material, newly discovered evidence that was not merely cumulative, even though defense had exercised due diligence, because trial court is in best position to determine whether new testimony probably would have changed result).

Answer, Ex. A, September 12, 2005, Memorandum Decision, pp. 7-9. The instances of recantations that were not presented at trial "would merely have afforded a different way to impeach" the victim. *United States v. Steel*, 759 F.2d 706, 714 (9th Cir. 1985).

During direct and cross examinations of the victim, she testified that she had recanted the allegations and the reasons why – that she felt bad Vega had been removed from the home and that everyone in the home was sad because Vega had been removed from the home. *See e.g.* R.T. 10/23/02, pp. 28-30, 36, 41. In light of the victim's testimony, the additional instances of recantations would have been "largely cumulative in their basic effect." *Norton v. Spencer*, 253 F.Supp. 2d 65, 70 (D. Mass. 2003). The Court finds Vega has not been prejudiced by any alleged deficiency.

- 9 -

*Pressure to Victim*

Vega argues that trial counsel was ineffective for failing to investigate and present evidence of pressure applied to the victim to maintain her claims of inappropriate contact by Vega.[6] This includes evidence a case manager, a CPS agent, and a police officer assured the victim that she had made a good decision. However, both the victim and her mother testified of similar circumstances – in other words, the additional instances of pressure or support would have been "largely cumulative in their basic effect." *Norton*, 253 F.Supp. 2d at 70. The Court finds Vega has not been prejudiced by any alleged deficiency. Vega presented this evidence included in a series of recantations or retractions at the post-conviction evidentiary hearing. Just as the other recantations would have been "largely cumulative in their basic effect," *Norton*, 253 F.Supp. 2d at 70, this evidence would have been cumulative in its effect. The Court finds Vega has not been prejudiced by any alleged deficiency.

*Recantation Referencing Ernest*

Vega points out that the magistrate judge did not specifically address the allegation that trial counsel failed to investigate and present evidence of the victim stating that Vega had not done anything, but that Ernest did.[7] To the extent that this evidence involves another incident of recantation, the Court again finds the evidence would have been cumulative in its effect. *Norton*, 253 F.Supp. 2d at 70. The Court finds Vega has not been prejudiced by any alleged deficiency.

---

[6]The Court notes that this was not raised as a separate claim in the state courts. However, the issue of pressure was argued to the post-conviction court in conjunction with the claims regarding investigation of the recantations. *See* Answer, Ex. N, R.T. 5/5/08.

[7]Ernest is the victim's stepbrother and shared a bedroom, but not a bed, with the victim.

*Objections Regarding Victim's Dreams, Imaginary Friends, and Hallucinations*

The expert at the post-conviction evidentiary hearing testified that evidence of the victim's dreams, imaginary friends, and hallucination indicated the victim was trying to retract the allegation, the evidence should have been submitted to an expert, and that the evidence may have been a possible explanation for the initial accusation.[8] Answer, Ex. M, R.T. 4/28/08, pp. 47, 50-51. As to these claims, the post-conviction court stated:

> 5. Petitioner presents fact-intensive issues as to counsel's performance, and, because of this, the Court believes it necessary to detail the events at trial. Preliminarily, the Court notes that both Petitioner and the victim testified, allowing the jury to weigh Petitioner's credibility against that of B. Before trial, on October 22, 2002, the Court held a hearing on Petitioner's motion in limine, to allow evidence of the prior molests suffered by B., not in order to impugn her chastity but for the purpose of establishing an alternate means by which she would have been exposed to sexualized behavior other than at Petitioner's hands. Petitioner's trial counsel, David Darby, argued that the primary purpose was to demonstrate that the prior molests predated B.'s sexualized nightmares, and provided an alternate explanation for how she would have possessed the knowledge to fabricate the allegations against Petitioner. The Court ruled that the prior molests were inadmissible under *State v. Oliver*, 158 Ariz. 22, 760 P.2d 1071 (1998).
>
> \* \* \* \* \*
>
> 12. . . . Petitioner's expert witness, Mr. Lougee, testified that under the circumstances of Petitioner's case, he would have consulted with an expert to prepare appropriate cross-examination, and possibly call an expert of his own to rebut Ms. Dutton's testimony.
>
> 13. However, Petitioner has failed to sustain this burden, as it remains unclear what testimony said expert would have provided, such that would likely have changed the verdict or sentence. Mr. Lougee testified as an expert on *professional norms for attorneys in this community*. While he is certainly qualified to opine about norms for attorneys, his ability to do so for a forensic child abuse expert testifying about recantation is less clear. Furthermore, cross-examination, as a matter of trial strategy, is committed to counsel's judgment. [*State v. Beaty*, 158 Ariz. 232, 707 P.2d 944 (1985)]. Petitioner, relying on *Gersten v. Senknowski*, 426 F.3d 588 (2d Cir. 2005) contends that failure to consult with an expert renders assistance constitutionally ineffective. Unfortunately for this position, *Gersten* deals with a sexual molestation case in which physical evidence was key, and the defense's failure to call either a psychological or a *medical* expert to refute the State's expert resulted in prejudice. Here, the jury was aware that Ms. Dutton was not testifying as to B.'s case in specific. This situation is a very different position from a medical expert opining as to the possible causes of a victim's injuries. Thus, the Court declines Petitioner's invitation

---

[8] Evidence of dreams, imaginary friends, and hallucinations were based on statements to others and alleged to have been included in a journal.

- 11 -

to apply the *Gersten* decision to these as *Gersten* is inapposite. The Court finds that Petitioner has failed to prove his claim to post-conviction relief on this ground, as he has not demonstrated that counsel's performance fell below the standard.[2]

[2] Nor has Petitioner shown that counsel's performance prejudiced him.

\* \* \* \* \*

18. Beyond these claims, there was testimony presented at the Rule 32 hearing dealing with a notebook journal purportedly kept by B. Mr. Lougee testified that, in his opinion, such a journal would have been helpful. (R.T. 4/28/08 at 38.) However, no evidence was presented demonstrating either the actual existence of such a journal, its contents, or Mr. Darby's knowledge or purported failure to obtain said journal. Instead, Mr. Lougee speculated as to its potential evidentiary worth. Petitioner at [the] hearing never even questioned Mr. Darby about the journal. Accordingly, the Court finds that Petitioner has failed to meet his burden of proof on this claim.

19. At argument, Petitioner also contended that the trial court erred in excluding evidence of B.'s prior molestations, and elicited testimony from Mr. Lougee to the effect that the failure to have the jury hear that evidence was prejudicial to Petitioner. (R.T. 4/28/08 at 38039.) This argument fails for a number of reasons. To begin, trial court error is not a congnizable ground for relief under Rule 32. Petitioner has not argued that Mr. Darby was ineffective arguing the issue; the trial transcript reveals that Mr. Darby argued vociferously albeit ultimately unsuccessfully against exclusion. (R.T. 10-6-02 at 25-30.) Petitioner now contends that Mr. Darby was ineffective in arguing the issue in that he failed to raise the so-called "*Oliver/Pope* exception" to the rape shield law. (R.T. 4/28/02 at 39.) The so-called "*Oliver[Pope* exception" to the rape shield laws, which exception consists of specific circumstances under which evidence of the victim's prior sexual history may be introduced, was first announced in *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 760 P.2d 1071 (1976) and extended, along with the rape shield law generally, to cover child molestation cases as well in *State v. Oliver*. The Court in *Oliver* announced the exception relevant to children as follows: "We believe that if an accused raises the defense of fabrication, and if the minor victim is of such tender years that a jury might infer that the only way the victim could testify in detail about the alleged molestation is because the defendant had in fact sexually abused the victim, then evidence of the victim's prior sexual history is relevant to rebut such an inference." 158 Ariz. at 28, 760 P.2d at 1077. Evidence raised pursuant to the exception is subject to Arizona Evidence Rules 401 and 403, and the balancing of probative value versus capacity for unfair prejudice. *Id*. During these Rule 32 proceedings, the first mention of the issue of inappropriate exclusion of prior incidents in which B. was molested came at the evidentiary hearing. Furthermore, review of the record in light of *State v. Oliver* demonstrates that the substance of Mr. Darby's argument was that the evidence went to demonstrate that B. had been sexualized prior to Petitioner's alleged abuses of her. *State v. Oliver*, 158 Ariz. 22, 760 P.2d 1071 (1988). Although this evidentiary use falls under the *Oliver* exception to the rape shield law, this Court ruled the evidence inadmissible during pretrial motions, after weighing its probative value under Rule 401 against its potential for unfair prejudice under Rule 403. The ruling of the Court is subject to an abuse of discretion standard. *State v. Smith*, 215 Ariz. 221, 150 P.3d 531 (2007), *cert. denied*, 128 S.Ct. 456. The Court finds that Petitioner has not borne his burden of proof on this ground.

20. The requirements of *Strickland* are clear: Petitioner must demonstrate both that

- 12 -

counsel's efforts fell below the standard prevailing in the community, and that these failings prejudiced him. The Court finds that Petitioner has failed to demonstrate that counsel's efforts fell below the prevailing professional norms. The Court further finds that, even assuming *arguendo* that counsel's efforts fell below standards, Petitioner has failed to prove prejudice as a result of those actions. The evidence against Petitioner included, but by no means was limited to: B's testimony; the fact that Petitioner failed to deny the molests to both B.'s mother and the police; and that B.'s brothers each provided facts that provided corroboration as to the elements of her testimony.[4] . . . Further support was provided by other witnesses, including her brothers, and the examinations of Molly Vega and Petitioner himself. Accordingly, given the evidence, the Court finds that Petitioner was not rendered ineffective assistance of counsel at trial.

> [4]B.'s oldest brother, Emmanuel Ramirez, testified that he had eavesdropped on their mother speaking with Petitioner on the phone after the allegations were made, and that Petitioner answered Molly Vega's question "Did you do it?" with "Yes." Emmanuel went on to say that Molly Vega then "went crazy and she got rid of anything like pictures and wedding, like everything with the wedding, burned it, threw stuff out. (R.T. 10/23/2001 at 71-72.) Emmanuel further testified that he remembered a time in the new house (the back house) when B. kept going in and out of a room in which Pete was, which story corroborated B.'s testimony as to the events surrounding one of the molests. *Id.* at 72. B.'s brother Daniel Bracamonte testified that he recalled an occasion when Petitioner told him to go to bed when B. was allowed to stay up. *Id.*. at 108. Daniel later heard tickling and laughing coming from the master bedroom, where B. and Petitioner were. *Id.* at 109. Later than (sic) night, as B. came into the room in which the two were sleeping, he saw her wiping her eyes, as though she was crying. *Id.* This story closely corroborated B.'s testimony that Vega molested her while tickling her.

Amended Petition, June 12, 2008, Minute Entry, pp. 2, 4, 6-7.

Given the reasons the Arizona courts stated for not granting relief, this Court does not find that the state courts' decision involved an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d) (habeas relief not available with respect to a claim unless the state courts' adjudication of it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"). As stated by the magistrate judge:

> In sum, Petitioner fails to establish that the PCR court's denial of his claims – that counsel was ineffective for failing to properly argue an exception to the rape shield law (Paragraph 22) or to introduce evidence related to the victim's prior molestations, sexualization, fantasy life, and hallucinations (Paragraphs 9, 10, 13-17, 19, and 20) – was an objectively unreasonable application of Strickland.

Report and Recommendation, p. 19. This is consistent with the post-conviction court's recognition that the expert presented at the evidentiary hearing was not necessarily qualified

to opine as a forensic child abuse expert testifying about recantation. In other words, Vega has not established that he was prejudiced by any alleged deficiency. The Court finds Vega is not entitled to habeas relief on these claims.

*Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *see also Robbins v. Carey*, 481 F.3d 1143,1146-47 (9th Cir. 2007) (failure to object to magistrate judge's conclusions does not automatically waive appellate challenge) In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would not find it debatable whether the Petition

stated a valid claim of the denial of a constitutional right and the Court finds that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling. A COA shall not issue as to these claims.

However, the Court finds that reasonable jurists may find the district court's assessment of the constitutional claims regarding the ineffective assistance of counsel claims as to the investigation and presentation of evidence of the recantations debatable or wrong. A COA, therefore, shall issue as to these claims.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation [Doc. # 17] is ADOPTED IN PART AND REJECTED IN PART as discussed herein.

2. Vega's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody is DENIED AND DISMISSED WITH PREJUDICE.

3. The Clerk of the Court shall enter judgment and shall then close its file in this matter.

4. A Certificate of Appealability shall issue as to Vega's claim that counsel was ineffective for failing to investigate and present evidence of the victim's recantations.

DATED this 29th day of February, 2012.

_____
Cindy K. Jorgenson
United States District Judge